RANDOLPH L. HOWARD, ESQ.
Nevada Bar No. 006688
NICOLE E. LOVELOCK, ESQ.
Nevada Bar No. 011187
**KOLESAR & LEATHAM, CHTD.**
3320 W. Sahara Avenue, Suite 380
Las Vegas, Nevada 89102
Telephone: (702) 362-7800
Facsimile: (702) 362-9472
E-mail: rhoward@klnevada.com
nlovelock@klnevada.com

Attorneys for Plaintiff
PLAZA BANK

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PLAZA BANK, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ALAN GREEN FAMILY TRUST, a Nevada trust, ALAN GREEN, an individual,<br><br>Defendants. | Case No.: 2:11-cv-00130-RCJ -RJJ<br><br>**OPPOSITION TO MOTION TO DISMISS AND COUNTERMOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaza Bank (the "Bank" or "Plaintiff"), by and through its attorneys of the law firm of Kolesar & Leatham, Chtd., hereby opposes Defendants' Motion to Dismiss the Complaint and/or in the Alternative Motion for Summary Judgment ("Defendants' Motion") and moves this Court for an order granting partial summary judgment in favor of the Bank and against Defendant Alan Green Family Trust ("Green Trust") and Alan Green ("Green") (collectively "Defendants") as to liability on the two claims of fraudulent transfer and for an order granting full summary judgment on the claim of declaratory relief.

This Motion is made and based upon the pleadings and papers on file herein, the following Memorandum of Points and Authorities, the Declaration of Leo Moschioni (the

"Moschioni Declaration") attached hereto as **Exhibit A**, the Declaration of Nicole Lovelock (the "Lovelock Declaration") attached hereto as **Exhibit B**, and any argument presented at the time of hearing of this matter.

DATED this 22 day of February, 2011.

KOLESAR & LEATHAM, CHTD.

By /s/ Nicole Lovelock
RANDOLPH L. HOWARD, ESQ.
Nevada Bar No. 006688
NICOLE E. LOVELOCK, ESQ.
Nevada Bar No. 011187
3320 W. Sahara Avenue, Suite 380
Las Vegas, Nevada  89102

A.   **INTRODUCTION**

Defendant's Motion seeks to dismiss Plaintiff's causes of action for fraudulent transfer. Strikingly, Defendants' Motion does not dispute, but rather concedes, that the Green Trust transferred three parcels of real property in December 2010 and then refused to continue paying on a debt owed to the Bank, and, that following said transfers, the Green Trust's sole remaining asset was the Bank's security, which no longer adequately secured repayment of the outstanding debt owed to the Bank. Based upon the undisputed facts, there is only one conclusion that can be made, to wit: the Green Trust made the transfers of the properties to leave the Green Trust with insufficient assets to satisfy the debt owed to the Bank, i.e. making the trust insolvent. The undisputed facts unequivocally prove the transfers are fraudulent under the Nevada Uniform Fraudulent Transfer Act.

/ / /

/ / /

B.  **ISSUES**

This case involves no disputed facts and only three legal issues to be determined by this Court. Those three issues are:

1.  Can the Defendants provide triable issues of fact to establish that the Green Trust conveyed property without the actual intent to hinder, delay or defraud the Bank?

2.  Can Defendants prove triable issues of fact that the transfers were for reasonably equivalent value when the Green Trust had "no assets" following said conveyances?

3.  Is the Bank proceeding against Green for fraudulent transfers to recover judgment for the amount necessary to satisfy the debt owed to the Bank pursuant to Nev. Rev. Stat. §112.220 a violation of Nev. Rev. Stat. §40.430?

The answer to the foregoing questions is an unequivocal no – mandating summary judgment for the Bank.

C.  **UNDISPUTED FACTS**

1.  Green Trust executed and delivered to SouthwestUSA Bank ("SouthwestUSA") a Credit Agreement and Disclosure ("Credit Agreement"), pursuant to which the SouthwestUSA agreed to loan Green Trust certain monies. *See* Moschioni Declaration, **Exhibit A1**, Credit Agreement; *see also* Defendants' Motion, pg. 5.

2.  In accordance with the Credit Agreement, Green Trust received one or more advances in the aggregate amount of $400,000.00 ("Loan"). *See* Moschioni Declaration, **Exhibit 1**; *see also* Defendants' Motion, pg. 5.

3.  As security for repayment of the Credit Agreement, Green Trust executed and delivered to SouthwestUSA a Revolving Credit Deed of Trust, Security Agreement, and Assignment of the Rents ("Deed of Trust"), whereby the Green Trust irrevocably granted all of its right, title and interest of the real property described as 1900 S. 16th Street, Las Vegas, Nevada, located in Clark County, and more fully described as APN 162-02-312-055 ("Subject Property"). *See* Moschioni Declaration, **Exhibit A2**, Deed of Trust; *see also* Defendants' Motion, pg. 5.

KOLESAR & LEATHAM, CHTD.
3320 West Sahara Avenue, Suite 380
Las Vegas, Nevada 89102
Tel: (702) 362-7800 / Fax: (702) 362-9472

1    4.   Green Trust defaulted under the terms of the Credit Agreement and Deed of Trust, (collectively "Loan Documents") by, among other things, failing to make the payments due and owing on December 25, 2010, and all subsequent payments. *See* Moschioni Declaration, **Exhibit A**; *see also* Defendants' Motion, pg. 5.

5.   Pursuant to the terms of the Loan Documents, a principal interest of $398,126.77 is due and owing, not inclusive of interest, late fees or charges thereon. *See* Moschioni Declaration, **Exhibit A**.

6.   On December 3, 2010, counsel for Green Trust sent a letter to the Bank stating that the Green Trust "no longer has any income or assets to continue making payments on the existing loan agreement, except for the security asset property located at 1900 South 16th Street in Las Vegas (Subject Property)." The letter stated that the payment made in November 2010 would be the final payment made on the Loan. *See* Moschioni Declaration, **Exhibit A3**, Letter.

7.   On the very same day of the letter, December 3, 2010, Green Trust transferred real property described as 2122 Golf Links Drive, Prescott, Arizona, located in Yavapai County, and more fully described as APN 102-12-016, from the Green Trust to Green for the consideration of Ten Dollars ($10.00). *See* Moschioni Declaration, **Exhibit A4**, Warranty Deed as recorded in the Official Records of Yavapai County.[1]

8.   On the very same day of the letter, December 3, 2010, Green Trust transferred real property described as 2201 Resort Way, Prescott, Arizona, located in Yavapai County, and more fully described as APN 102-06-202A, from the Green Trust to Green for the consideration of Ten Dollars ($10.00). *See* Moschioni Declaration, **Exhibit A5**, Warranty Deed as recorded in the Official Records of Yavapai County.

9.   On December 8, 2010, Green Trust transferred real property described as 1608 Coyote Road, Prescott, Arizona, located in Yavapai County, and more fully described as APN 107-21-022, from the Green Trust to Linda Smith for the consideration of Ten Dollars ($10.00).

---

[1] While Plaintiff's counsel is currently obtaining the certified Warranty Deeds described herein, the Court may take judicial notice of said transfers pursuant to Nev. Rev. Stat. §47.130. In addition, Defendants' Motion concedes that said transfers were made.

879597.doc (7923-8)   Page 4 of 15

*See* Moschioni Declaration, **Exhibit A6**, Warranty Deed as recorded in the Official Records of Yavapai County.

10. On December 21, 2010, at the Bank's request, an appraisal of the Subject Property was conducted and the Subject Property was valued at $175,000. *See* Moschioni Declaration, **Exhibit A**.

11. Based upon the appraisal, the Subject Property no longer adequately secures repayment of the amount owed on the Credit Agreement. *Id.*

12. On December 28, 2010, counsel for Green Trust sent a letter to the Bank's counsel stating that "the position of the Trust remains that there is no trust income to continue making payments under the original line of credit..." *See* Lovelock Declaration, **Exhibit B1**.

13. The Bank requested on multiple occasions, by and through counsel, that the Green Trust disclose the disposition of assets for the last two years, but the Green Trust did not provide said documents. *See* Lovelock Declaration, **Exhibit B**.

14. In April 2009, Alan Green completed, but did not execute, an individual financial statement whereby he listed the 2122 Golf Links Drive, Prescott, Arizona property as having a market value of $900,000.00 with a mortgage balance of $400,000.00, the 2201 Resort Way, Prescott, Arizona property as having a market value of $800,000.000 with a mortgage balance of $300,000.00 and the 1608 Coyote Road, Prescott, Arizona property as having a market value of $300,000.00 without carrying a mortgage balance. *See* Moschioni Declaration, **Exhibit A7**.

15. In May of 2008, Alan Green completed an individual financial statement whereby he listed the 2122 Golf Links Drive, Prescott, Arizona property as having a market value of $800,000.00 with a mortgage balance of $375,000.00, the 2201 Resort Way, Prescott, Arizona property as having a market value of $900,000.000 without carrying a mortgage balance, and the 1608 Coyote Road, Prescott, Arizona property as having a market value of $350,000.00 without carrying a mortgage balance. From 2008 to 2009, the 2201 Resort Way, Prescott, Arizona property obtained a mortgage in the amount of $300,000.00. A true copy of page 2 of the disclosure statements are attached hereto as Exhibit 7 and incorporated herein by this reference. *See* Moschioni Declaration, **Exhibit A7**.

### D. LEGAL STANDARD

#### 1. Motion to Dismiss Standard

In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, a court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Nevertheless, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995).

The Supreme Court has recently revised the standard for Rule 12(b)(6) motions. In *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007), the court clarified the "no set of facts" test and held that a plaintiff must plead its claims adequately. If the allegations in the complaint do not establish a viable legal cause of action, Rule 12(b)(6) is an appropriate tool. A plaintiff may not proceed with a cause of action if there is no "reasonably founded hope" that discovery will lead to evidence establishing the claim. Id. at 1969.

#### 2. Summary Judgment Standard

Summary judgment is appropriate if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.*; *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cnty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

However, the party opposing summary judgment "may not rest upon the mere allegations or denials of the [party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed. R. Civ. P.; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-88 (1986); *Brinson v. Lind Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the non-moving party. If the evidence is merely colorable or if not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. If the defendant party can establish that the plaintiff fails on even one element, the defendant is entitled to summary judgment.

E.   **LEGAL ARGUMENT**

Based on the undisputed facts, the Court is left with no alternative to finding that the Green Trust's transfers of the three parcels of real property were done with the with the actual intent to hinder, delay and defraud the Bank, a violation of Nev. Rev. Stat. §112.180, or, that the transfers made the Green Trust became insolvent and the trust received less than reasonably equivalent value, a violation of Nev. Rev. Stat. §112.190. Under either scenario, the transfers are fraudulent under Nevada law and subject to the relief provided in Chapter 112 of the Nevada Revised Statutes.

Once this Court finds, as it should, that the transfers constitute fraudulent transfers, the Bank is entitled to a variety of remedies, including the ability to recover judgment against Green for the amount necessary to satisfy the debt owed the Bank pursuant to Nev. Rev. Stat. §112.220. As such, the Bank requests that this Court hold as a matter of law that the Bank is entitled to recover such a judgment against Green without violating Nev. Rev. Stat. §40.430.

1. **The Transfer of Three Properties From The Green Trust Are Fraudulent Transfers.**

The Uniform Fraudulent Transfer Act ("UFTA"), codified as Chapter 112 of the Nevada Revised Statutes, "is designed to prevent a debtor from defrauding creditors by placing the subject property beyond the creditors' reach." *Herup v. First Boston Financial, LLC*, 123 Nev. 228, 232, 162 P.3d 870, 872 (Nev. 2007). The UFTA provides relief to creditors who have been injured by three types of fraudulent transfers: (1) actual fraudulent transfers; (2) constructive fraudulent transfers; and (3) certain transfers made by insolvent debtors. *Id.* at 873 (citing Nev. Rev. Stat. §112.180 and §112.190).[2]

Based on the undisputed facts above, the Court must find that the Green Trust's transfers of the various parcels of real property were done with the actual intent to hinder, delay and defraud the Bank, or, at a minimum, that the Green Trust did not receive reasonably equivalent value in exchange for the transfer and the Green Trust became insolvent as a result of the transfers.

    A. **Pursuant to Nev. Rev. Stat. §112.180, the Court should find that the Green Trust conveyed property with actual intent to hinder, delay or defraud the Bank.**

A transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer or incurred the obligation "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor." Nev. Rev. Stat. §112.180(1)(a). A transfer is deemed fraudulent if the transfer is made by the transferor with actual intent to hinder, delay or defraud creditors, regardless of the nature or extent value was given by the recipient of the transfer. *See In re Agriculture Research and Technology Group, Inc.*, 916 F. 2d 528, 538 (9th Cir. 1990) (under actual fraudulent transfer statute, the entire transfer may be avoided, even if reasonably equivalent value was given, so

---

[2] Because the Bank is a creditor under the definition of UFTA, the Bank may avail itself to the rights under Nevada's fraudulent transfer provisions. A creditor is defined as "a person who has a claim," which is in turn defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Nev. Rev. Stat. §112.150(3)-(4). Here it is undisputed that the Green Trust owes the Bank money pursuant to the Loan Documents. *See*, e.g., Exhibit A3, B1, Letters. As such, Green Trust is a "debtor" liable on a "claim" to the Bank within the meaning of the UFTA.

long as the transferor actually intended to hinder, delay or defraud its creditors and the transferee accepted the transfer without good faith). Factors to be considered in determining actual intent under section 112.180(1)(a) include, but are not limited to, the eleven factors listed in Nev. Rev. Stat. §112.180(2), which represents the traditional "badges of fraud" – that is, "recurring actions that have historically been associated with the actual intent to hinder, delay or defraud creditors." *See In re National Audit Def. Network*, 367 B.R. 207, 220 (Bankr. D. Nev. 2007). While the intent of the debtor may be a factual inquiry, if there are no genuine issue of material fact, summary judgment is still appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

    In the instant case, an analysis of the undisputed material facts compels this Court to find that the trustee of the Green Trust possessed actual intent to hinder, delay and defraud the Bank. Many of the traditional badges of fraud are present and not in dispute:

(i) **Nev. Rev. Stat. §112.180(2)(a) – Transfer to an Insider** - As evidenced by the Warranty Deeds, two of the transfers were to the insider Green, the trustee of the Green Trust. See **Exhibit A4-A6**.

(ii) **Nev. Rev. Stat. §112.180(2)(b) – Debtor Remained in Control** - As evidenced by the Warranty Deeds, two of the transfers were to the trustee of the Green Trust. *See* **Exhibit A4-A6**.

(iii) **Nev. Rev. Stat. §112.180(2)(c) – Transfer Concealed** - The transfers were not disclosed to the Bank, even after the Bank made repeated attempts to obtain a disposition of the Green Trust's assets. *See* **Exhibit B1**.

(iv) **Nev. Rev. Stat. §112.180(2)(d) – Debtor Knew of Potential Suit** – As evidenced by the Loan Documents, the trustee of the Green Trust knew that upon the Green Trust's default, the Bank had the right to litigate to collect the amounts due and owing. *See* **Exhibit A1**.

(v) **Nev. Rev. Stat. §112.180(2)(e) –Transfer Was of Substantially All the Debtor's Assets** – As stated by the Green Trust's counsel, the transferred properties were

1  substantially all of assets of the Green Trust because only the Subject Property remained
2  in the trust after said transfers. *See* **Exhibit A3.**

3  (vi) **Nev. Rev. Stat. §112.180(2)(g) – Whether The Transferor Removed or
4  Concealed Assets** – The transfers were not disclosed to the Bank, even after the Bank
5  made repeated attempts to obtain a disposition of the Green Trust's assets. *See* **Exhibit
6  B1.**

7  (vii) **Nev. Rev. Stat. §112.180(2)(h) – Whether The Value Received Was Reasonably
8  Equivalent To The Value Of The Asset -** As evidenced by the Warranty Deeds, each
9  transfer was for the consideration of ten dollars, but as of 2009, Green valued the three
10 properties at two million. *See* **Exhibit A4-A7.**

11 (viii) **Nev. Rev. Stat. §112.180(2)(i) – Debtor Became Insolvent After Transfer** – As
12 stated by the Green Trust's counsel, the Green Trust was insolvent on December 3, 2010.
13 *See* **Exhibit A3.** (The transfer to Linda Smith occurred after the letter dated December 3,
14 2010, but before the within Complaint was filed, *see* Undisputed Facts, pg 4-5, ¶ 9,
15 *supra*).

16 Additionally, the timing of the transfers is particularly redolent of the fraud. Plaintiff submits
17 that it is no coincidence that the Green Trust told the Bank that it would stop paying on the Loan
18 Documents at the very same time the Green Trust was transferring assets valued by Mr. Green at
19 approximately $2,000,000.00. *See* **Exhibit A7**. Even more telling is the fact that the Green
20 Trust refused to disclose to the Bank the fact that the transfers occurred. Based upon the
21 foregoing, a reasonable jury could only find that the transfers were made with actual intent to
22 hinder, delay, or defraud the Bank.

23 Moreover, Nev. Rev. Stat. §47.240 states that "[a] malicious and guilty intent, from the
24 deliberate commission of an unlawful act, for the purpose of injuring another" is a conclusive
25 presumption. This presumption applies in this proceeding pursuant to Rule 302 of the Federal
26 Rules of Evidence. *See* Fed. R. Ev. 302("In civil actions and proceedings, the effect of a
27 presumption respecting a fact which is an element of a claim or defense as to which State law
28 supplies the rule of decision is determined in accordance with State law."). Here, the Green trust

committed deliberate acts that are unlawful. In Nevada, a fraudulent transfer is unlawful pursuant to Nev. Rev. Stat. §205.350. As such, the Court may conclusively presume that the Green Trust has a malicious and guilty intent by committing said transfers.

In sum, the undisputed facts and chronology are emblematic, nay resounding proof, of an effort to hinder or delay the Bank from reaching assets, which makes summary judgment with regard to the intent of the Green Trust appropriate. It is undisputed that the Green Trust transferred assets out of the Bank's reach when it transferred the three properties. It is also undisputed that on the same day two of the transfers were made, December 3, 2010, counsel for Green Trust sent a letter stating that the "Trust no longer has any income or assets." *See* **Exhibit A3**. However, it is also undisputed that the representation that the Trust had no assets was not accurate; the Green Trust had additional property until December 8, 2010. *See* **Exhibit A5**. Based upon these undisputed facts, there are only two valid inferences that could be made: (1) the Green Trust made the transfers of the properties to force the Bank into settling for less than the debt owed; or (2) the Green Trust made the transfers of the properties to make the Green Trust have no additional assets for the Bank to collect upon, essentially making the trust judgment proof. Indeed, it could be argued, without hyperbole, that Green could be the poster-boy for fraudulent transfers. Either way, the Green Trust did so with "actual intent to hinder, delay or defraud" the Bank.

As such, the conclusion that the Green Trust acted with actual fraud is the only reasonable interpretation of the undisputed facts and summary judgment is appropriate.

     **B.**    **Pursuant to Nev. Rev. Stat. §112.190, the Court should find that the Green Trust conveyed property without receiving reasonably equivalent value and as a result of the transfer became insolvent.**

A transfer is fraudulent if the debtor did not receive reasonably equivalent value in exchange for the transfer and the debtor became insolvent as a result of the transfer. Nev.Rev.Stat. § 112.190(1). This type of fraudulent conveyance does not require proof of intent to defraud. See *Sportsco Enters. v. Morris*, 112 Nev. 625, 631, 917 P.2d 934, 937 (1996). Rather, the creditor bears the burden of proof both with respect to the insolvency of the debtor and the inadequacy of consideration. *Id.*; *see also Matusik v. Large*, 85 Nev. 202, 205, 452 P.2d

1  457, 458 (1969). Once the creditor establishes these criteria, the burden shifts to the defendant to
2  come forward with rebuttal. *Id.* citing *Territorial Sav. & Loan Ass'n v. Baird*, 781 P.2d 452, 462
3  n. 18 (Utah Ct.App.1989); *Erjavec v. Herrick*, 827 P.2d 615, 617 (Colo.Ct.App.1992). As such,
4  when a creditor establishes its burden, the defendant <u>must</u> show either that the debtor was solvent
5  at the time of the transfer and not rendered insolvent thereby or that the transfer was supported
6  by fair consideration. *Id.* (emphasis added) citing *Kirkland v. Risso*, 98 Cal.App.3d 971, 159
7  Cal.Rptr. 798, 802 (Ct.App.1980); *Harvey v. Harvey*, 841 P.2d 375, 377 (Colo.Ct.App.1992).

8        Here, the Bank has met its burden and the Green Trust cannot establish that it is solvent
9  or that the transfers were for fair consideration.  The Grant Deeds state that consideration for
10 each conveyance was only ten dollars.  *See* **Exhibits A3-A6**.  Moreover, Defendants conceded
11 that the Green Trust was insolvent following the conveyances. *See* **Exhibit A3** ("[the Green
12 Trust] no longer has any income or assets to continue making payments on the existing loan
13 agreement, except for the security asset property located at 1900 South 16th Street in Las Vegas
14 (Subject Property)." *See* **Exhibit A3**.  Moreover, the Court should conclude that the Green Trust
15 is insolvent because the trust's counsel, its agent, stated that that the trust had no assets.  Exhibit
16 A3 is admissible pursuant to Rule 804(b)(3) of the Federal Rules of Evidence, which states that a
17 statement against interest is a hearsay exception.  *See* Fed. R. Ev. 804(b)(3).  Moreover, the
18 Green Trust's attorney and agent would not assert such a statement unless the agent believed it to
19 be true, as it must be presumed, and he would not have violated Rule 4.1 of the Nevada Rules of
20 Professional Conduct by intentionally making a false statement.  *See* Nev. R. Civ. Prof. 4 ("In
21 the course of representing a client a lawyer shall not knowingly: (a) Make a false statement of
22 material fact or law to a third person; or (b) Fail to disclose a material fact to a third person when
23 disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless
24 disclosure is prohibited by Rule 1.6."). Because Defendants cannot establish that it is not
25 insolvent or that it obtained fair consideration for the properties, summary judgment for the Bank
26 is appropriate.
27 / / /
28 / / /

KOLESAR & LEATHAM, CHTD.
3320 West Sahara Avenue, Suite 380
Las Vegas, Nevada 89102
Tel: (702) 362-7800 / Fax: (702) 362-9472

## 2. The Bank Obtaining A Monetary Judgment Against Green For Fraudulent Transfers Does Not Violate The Nevada One-Action Rule.

This Court should hold as a matter of law hold that the Bank is entitled to pursue Green for fraudulent transfer pursuant to Nev. Rev. Stat. §112.180 and Nev. Rev. Stat. §112.190 to recover judgment for the amount necessary to satisfy the debt owed the Bank pursuant to Nev. Rev. Stat. §112.220 without violating Nev. Rev. Stat. §40.430. Nevada's one-action rule as codified in Nev. Rev. Stat. §§40.430(1) and (2) states:

> 1. Except in cases where a person proceeds under subsection 2 of NRS 40.495 or subsection 1 of NRS 40.512, there may be but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate. That action must be in accordance with the provisions of NRS 40.430 to 40.459, inclusive. In that action, the judgment must be rendered for the amount found due the plaintiff, and the court, by its decree or judgment, may direct a sale of the encumbered property, or such part thereof as is necessary, and apply the proceeds of the sale as provided in NRS 40.462.
>
> 2. This section must be construed to permit a secured creditor to realize upon the collateral for a debt or other obligation agreed upon by the debtor and creditor when the debt or other obligation was incurred.

Nev. Rev. Stat. §40.430. The Nevada one-action rule requires a creditor seeking recovery on a debt to judicially foreclose on all real property encumbered as security for the debt, sue on the entire debt and obtain a deficiency judgment against the debtor in the same foreclosure action. The statute contemplates a creditor's action to exhaust the security before recovering from the debtor personally. *See Keever v. Nicholas Beers Co.*, 96 Nev. 509, 513, 611 P.2d 1079, 1082 (1980); *see also Nevada Wholesale Lumber v. Myers Realty*, 92 Nev. 24, 28, 544 P.2d 1204, 1207 (1976). As a general matter, should the creditor fail to follow the single action procedure by taking a separate action on the obligation to judgment against the debtor, the one-action rule dictates the creditor's loss of rights in the real estate collateral securing the debt in question. *Nevada Wholesale Lumber*, 92 Nev. at 30, 544 P.2d at 1208.

However, Nev. Rev. Stat. §40.430(6) enumerates sixteen acts that do not constitute a duplicative action under the statute. The litigation against Green to recover judgment for the amount necessary to satisfy the debt owed to the Bank is not "an action" for the purpose of Nev.

Rev. Stat. §40.430. Specifically, the "the recovery of damages arising from the commission of a tort...or the recovery of any declaratory or equitable relief" is not defined as an action. *See* Nev. Rev. Stat. §40.410(6)(d). Many states have held that fraudulent conveyances are akin to a tort.[3] *See, e.g., In re Sverica Acuistion Corporation*, 179 B.R. 457, 469 (Bankr. E.D. Pa. 1995) ("the conclusion that a fraudulent conveyance is a tort has not been disputed in Pennsylvania jurisprudence."); *Sunrise Industrial Joint Venture v. Signal Technology*, 873 F. Supp. 765, 770 (E.D.N.Y. 1995) (a cause of action for fraudulent conveyance is a specie of tort); *RCA Corp. v. Tucker*, 696 F. Supp. 845 (E.D.N.Y. 1988) (whether assignment was wrong or fraudulent vis-a-vis creditors is one of tort law); *In re OPM Leasing Services, Inc.*, 40 B.R. 380, 391-95 (Bankr. S.D.N.Y. 1984), aff'd, 44 B.R. 1023 (S.D.N.Y. 1984) (fraudulent conveyance a tort for conflict of law purposes); *In re Colonial Realty*, 168 B.R. 506, 508-9 (Bankr. D. Conn. 1994) (fraud statute of limitations applies to fraudulent transfer claims); *Fina Oil v. Pester Mktg*, 1997 U.S. Dist. LEXIS 5891, 5 (D. Kan. 1997) (fraudulent transfer considered tort count); *Combs v. Chamber*, 283 F. Supp. 295, 297 (N.D. Okla. 1968) (fraudulent conveyance considered a tort). As such, the Bank may pursue a judgment against Green for fraudulent conveyance without violating Nevada's one-action rule.

Moreover, the Nevada Supreme Court recognizes that the purpose behind the one-action rule in Nevada is to prevent harassment of debtors by creditors attempting double recovery by seeking a full money judgment against the debtor and by seeking to recover the real property securing the debt. *See, e.g., McDonald v. D.P. Alexander & Las Vegas Boulevard, LLC*, 121 Nev. 812, 123 P.3d 748 (Nev. 2005). Here, the Bank seeking judgment against Green will not result in a double recovery, but, instead, would prevent the Defendants from obstructing the Bank from collecting the amounts rightfully due and owing under the Loan Documents.

---

[3] There are a limited number of reported decisions construing the Nevada statutes, and consistent with the purposes of adoption of uniform laws such as the Uniform Fraudulent Transfer Act, the Nevada version of the Act provides that it must be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it. Nev. Rev. Stat. § 112.250.

Accordingly, this Court should hold as a matter of law hold that the Bank is not violating Nev. Rev. Stat. §40.430 when it recovers judgment against Green for the amount necessary to satisfy the debt owed the Bank pursuant to Nev. Rev. Stat. §112.220.

**F.     CONCLUSION**

Based on the foregoing, the Bank respectfully submits that there is no undisputed question of material fact regarding the fraudulent transfers made by the Green Trust and respectfully requests this Court issue an Order denying Defendants' Motion and granting the Bank's Motion for Partial Summary Judgment As to Liability on the Second and Third Cause of Action and Summary Judgment on the First Cause of Action.

DATED this 22 day of February, 2011.

KOLESAR & LEATHAM, CHTD.

By _____
RANDOLPH L. HOWARD, ESQ.
Nevada Bar No. 006688
NICOLE E. LOVELOCK, ESQ.
Nevada Bar No. 011187
3320 W. Sahara Avenue, Suite 380
Las Vegas, Nevada 89102

Attorneys for Plaintiff
PLAZA BANK