**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

PLAZA BANK, a California Corp.,  )
        Plaintiff,  )
        v.  )    2:11-cv-130-RCJ-RJJ
          )    **ORDER**
ALAN GREEN FAMILY TRUST, a Nevada  )
trust; ALAN GREEN an individual,  )
        Defendants.  )
_____

Currently before the Court are Defendants' Motion to Dismiss Complaint and/or in the Alternative Motion for Summary Judgment (#6) and Plaintiff's Countermotion for Partial Summary Judgment (#13). The Court heard oral argument on July 15, 2011.

**BACKGROUND**

In January 2011, Plaintiff Plaza Bank ("Plaintiff" or the "Bank"), an assignee of SouthwestUSA Bank filed a complaint against Defendants Alan Green Family Trust ("Green Trust" or "Trust") and Alan Green ("Green") (collectively "Defendants") and alleged the following. (Compl. (#1) at 1). The Federal Deposit Insurance Corporation ("FDIC") assigned SouthwestUSA Bank's loan documents to Plaintiff, a California banking corporation. (*Id.* at 2). The Green Trust executed a Credit Agreement and Disclosure with SouthwestUSA whereby SouthwestUSA agreed to loan the Green Trust $400,000. (*Id.*). As security for repayment of the Credit Agreement, the Green Trust executed a Revolving Credit Deed of Trust, Security Agreement and Assignment of Rent ("Deed of Trust") with SouthwestUSA, whereby the Green Trust irrevocably granted all of its rights, title, and interest in real property located at 1900 S. 16th Street, Las Vegas, Nevada (the "Vegas Property"). (*Id.* at 2-3). The

Vegas Property declined in value and no longer adequately secured repayment of the amount owed on the Credit Agreement. (*Id.* at 3). On December 25, 2010, the Green Trust defaulted on the Credit Agreement and Deed of Trust (collectively "Loan Agreement") by failing to make the payments due and owing. (*Id.*). The Green Trust owed the Bank an excess of $398,126.77. (*Id.*). On December 3, 2010, the Green Trust transferred real property described as 2122 Golf Links Drive, Prescott, Arizona, and 2201 Resort Way, Prescott, Arizona, from the Green Trust to Green without any reasonable equivalent value to the Green Trust, or any value whatsoever. (*Id.*). On December 16, 2010, the Green Trust transferred real property described as 1608 Coyote Road, Prescott, Arizona, from the Green Trust to a Linda Smith in which all consideration and proceeds were transferred from the Green Trust to Green without any reasonably equivalent value or value whatsoever to the Green Trust. (*Id.*).

The complaint alleged three causes of action. In the first cause of action, Plaintiff sought declaratory relief that it was entitled to pursue claims for fraudulent transfer, pursuant to NRS §§ 112.180, 112.190, against Defendants without violating Nevada's one-action rule, NRS § 40.430. (*Id.* at 3-4). In the second cause of action, Plaintiff alleged that the Green Trust had made fraudulent transfers of property in violation of NRS § 112.180. (*Id.* at 4). In the third cause of action, the Plaintiff alleged that the Green Trust made fraudulent transfers of property in violation of NRS § 112.190. (*Id.*).

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are "facts that might affect the outcome

of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## DISCUSSION

**I.   Defendants' Motion to Dismiss Complaint and/or in the Alternative Motion for Summary Judgment (#6)**

Defendants argue that because it submitted matters outside the pleadings in support of this motion, the Court should consider the motion as one for summary judgment.

3

1  (Alternative Mot. for Summ. J. (#6) at 2). Defendants argue that, pursuant to the Loan
2  Agreement, Plaintiff may only foreclose on the underlying collateral and may not foreclose on
3  any other trust property. (*Id.* at 5). They assert that the trust itself never had any regular
4  income producing assets and that, when the trust was no longer able to make loan payments,
5  Green as Trustee, notified Plaintiff. (*Id.*). They contend that Plaintiff has no recourse against
6  Green because he did not sign a personal guarantee to the loan agreement. (*Id.* at 6). They
7  assert that Plaintiff's only recourse is to foreclose on the Vegas Property and take the
8  proceeds in satisfaction of the Loan Agreement. (*Id.*). They argue that the trust has no other
9  assets and that Plaintiff has no existing right to go after the other assets of Green individually
10 or those assets that were in the trust. (*Id.*). They also assert that, under Nevada law, Green
11 as Trustee, could move property in and out of the trust at any time and for any reason. (*Id.*).
12 They note that Green never moved the Vegas Property out of the trust. (*Id.* at 7). They assert
13 that the Loan Agreement did not require the Trust to maintain any additional collateral in the
14 Trust beyond the Vegas Property. (*Id.* at 6).

15      In support of the motion for summary judgment, Defendants attach Green's Affidavit,
16 the Green Trust documents, the Credit Agreement, and the Deed of Trust. (*See* Exhibits (#6,
17 7, 8, 9)). Green's affidavit stated the following. (Green Aff. (#6-1) at 1). Green created the
18 Green Trust, a revocable trust, in February 2005, and named himself the Trustee. (*Id.*). He
19 made the Vegas Property a trust asset. (*Id.*). The attorney who created the trust advised
20 Green that Green had "the power to manage and control the Trust assets, which included the
21 legal ability to sell, convey, exchange or otherwise dispose of any Trust property at any time."
22 (*Id.*). The Trust never had any regular income producing assets. (*Id.* at 2). When the Trust
23 was "no longer able to continue making loan payments, [Green] notified Plaintiff . . . of these
24 events and of [his] intent to relinquish any control of the [Vegas Property] to the Bank for
25 foreclosure proceedings or to execute a deed in lieu of foreclosure to the Bank." (*Id.*). In
26 2010, he transferred three properties out of the Trust. (*Id.*). Some of those properties were
27 encumbered with debt and personal guarantees against Green individually. (*Id.* at 2-3). He
28 did not move or dispose of the Vegas Property because of its status as the designated

4

collateral for the Loan Agreement with Plaintiff. (*Id.* at 3). He had no objections to the foreclosure of the Vegas Property to satisfy the loan obligation. (*Id.*).

The Credit Agreement, dated January 25, 2006, stated that the Green Trust was the borrower and that SouthwestUSA was the lender. (Credit Agreement (#7-1) at 1). The credit amount was for $400,000. (*Id.*). The agreement stated that "Borrower acknowledges this Agreement is secured by the following collateral described in the security instrument listed herein: a Revolving Credit Deed of Trust dated January 25, 2006, to a trustee in favor of [SouthwestUSA] on real property located in Clark County, State of Nevada." (*Id.* at 2). Under the provision entitled "Lender's Rights," the Bank could terminate the credit line account and require Borrower to pay the entire outstanding balance in one payment if (1) Borrower commited fraud or made a material misrepresentation at any time with the Credit Agreement, including a false statement about Borrower's income, assets, liabilities, or any other aspect of Borrower's financial condition, or (2) Borrower did not meet the repayment terms of the Credit Agreement. (*Id.* at 3; Credit Agreement (#7-2) at 2).

The Deed of Trust stated the following. (Deed of Trust (#8-1)). The Vegas Property secured the indebtedness of the revolving line of credit. (*Id.* at 2). It was the intention of grantor (Green as trustee of the Green Trust) and the lender that the deed of trust secure "the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance." (*Id.* at 1-2). The deed of trust was given to secure payment of the indebtedness including future advances and performance of each of grantor's agreements and obligations under the Credit Agreement. (*Id.* at 2). In the event of a default, the lender could, *inter alia*, accelerate indebtedness, foreclose on the Vegas Property, and/or invoke any other right or remedy provided by law. (Deed of Trust (#8-2) at 4-5).

The Green Trust documents stated the following. (Trust Agreement (#9-1) at 1). In February 2005, Green as trustor and as trustee established the Green Trust. (*Id.*). The Green Trust listed the Vegas Property as the only trust asset. (*Id.* at 6). The trustee had the power to borrow money and encumber the trust property by deed of trust. (Trust Agreement (#9-3)

5

at 2). The trustee had the power to retain, invest, reinvest in the trust estate every kind of property. (*Id.*).

In response, Plaintiff filed an opposition to the motion to dismiss and countermotion for partial summary judgment in the same pleading, but also docketed the countermotion for partial summary judgment in a separate entry. (*Compare* Opp'n Mot. to Dismiss (#12), *with* Countermotion (#13)). Plaintiff's opposition does not respond to the arguments raised by Defendants and instead Plaintiff tries to move for summary judgment on other grounds. (*See generally* Opp'n Mot. to Dismiss (#12)).

In reply, Defendants argue that because Plaintiffs have failed to respond to their motion for summary judgment, this Court should grant their motion based on Local Rule 7-2(d). (Reply to Alternative Mot. (#14) at 3).

Although Plaintiff's opposition to Defendants' motion for summary judgment is non-responsive, the Ninth Circuit has held that "a nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law." *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003). The Ninth Circuit has noted that, in light of Rule 56's standards, it is highly questionable that "a local rule can mandate the granting of summary judgment for the movant based on a failure to file opposing papers where the movant's papers are themselves insufficient to support a motion for summary judgment or on their face reveal a genuine issue of material fact." *Henry v. Gill Indust., Inc.*, 983 F.2d 943, 949 (9th Cir. 1993).

In Nevada, "there may be but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate." Nev. Rev. Stat. § 40.430(1). "In that action, the judgment must be rendered for the amount found due the plaintiff, and the court, by its decree or judgment, may direct a sale of the encumbered property, or such part thereof as is necessary . . . ." *Id.* Thus, in Nevada, "to recover a debt secured by real property . . . , a creditor must seek to recover on the property through judicial foreclosure before recovering from the debtor personally." *McDonald v. D.P. Alexander & Las Vegas Blvd., LLC*, 123 P.3d 748, 750 (Nev. 2005). The purpose of the one-action rule is "to

6

prevent harassment of debtors by creditors attempting double recovery by seeking a full money judgment against the debtor and by seeking to recover the real property securing the debt." *Id.* at 751. "Under the one-action rule, a debtor can require a creditor to foreclose on real estate security before suing on the note or, if the creditor sues on the note first, force the creditor to lose its security interest." *Id.*[1]

Within six-months of the foreclosure sale or trustee's sale held pursuant to NRS § 107.080, a judgment creditor may apply for and receive a deficiency judgment if there is a deficiency of the proceeds of the sale and a balance remaining to due to the judgment creditor. Nev. Rev. Stat. § 40.455(1). However, if the judgment creditor is a financial institution, the court may not award a deficiency judgment even if there is a deficiency of the proceeds of the sale and remaining balance due if:

>  (a) The real property is a single-family dwelling and the debtor or grantor was the owner of the real property at the time of the foreclosure sale or trustee's sale;
>  
>  (b) The debtor or grantor used the amount for which the real property was secured by the mortgage or deed of trust to purchase the real property;
>  
>  (c) The debtor or grantor continuously occupied the real property as the debtor's or grantor's principal residence after securing the mortgage or deed of trust; and
>  
>  (d) The debtor or grantor did not refinance the mortgage or deed of trust after securing it.

Nev. Rev. Stat. § 40.455(3)(a)-(d).

In this case, Defendants motion for summary judgment fails as a matter of law. As the statutes demonstrate, Plaintiff, as a creditor, is entitled to seek a deficiency judgment against the Green Trust, a debtor, after Plaintiff forecloses on the security interest. Therefore, after foreclosing on the security interest, Plaintiff is entitled to seek satisfaction of the deficiency from other trust assets. The evidence presented by Defendants do not prohibit Plaintiff from seeking a deficiency judgment after it forecloses on the security interest. Moreover, Defendants have not argued and have not provided any evidence that demonstrates that Plaintiff is precluded from seeking a deficiency judgment based on NRS § 40.455(3)(a)-(d).

---

[1] The exceptions will be discussed under the section analyzing Plaintiff's countermotion.

1  Therefore, the Court denies Defendants' motion for summary judgment (#6).

## II. Plaintiff's Countermotion for Partial Summary Judgment (#13)

Although Plaintiff states that its motion is for "partial" summary judgment, Plaintiff seeks summary judgment on all causes of action. (Countermotion (#13) at 1). Plaintiff argues that the transfer of the three properties from the Green Trust are fraudulent transfers. (*Id.* at 8). Plaintiff asserts that the Green Trust conveyed property with actual intent to hinder, delay, or defraud it, in violation of NRS § 112.180, because two transfers were made to insider Green as trustee, the transfers were not disclosed to the Bank, Green knew that upon the Green Trust's default the Bank would have the right to litigate, the Vegas Property was the only asset in the Trust after the transfers, the transfers were for consideration of ten dollars even though Green had valued the properties at two million in 2009, and the Trust was insolvent on December 3, 2010. (*Id.* at 9-10). Plaintiff asserts that on the same day that Green told Plaintiff that the Trust had no assets, Green transferred two properties out of the Trust, and then transferred the third property five days later. (*Id.* at 11). Plaintiff argues that the Green Trust acted with actual fraud. (*Id.*). Plaintiff asserts that the Green Trust conveyed property without receiving reasonably equivalent value in violation of NRS § 112.190. (*Id.*). Plaintiff asserts that it has met its burden and that the Green Trust cannot establish that it was solvent or that the transfers were for fair consideration. (*Id.* at 12). Plaintiff argues that, as a matter of law, it is not violating the one-action rule because many states have found that fraudulent conveyances are akin to a tort which exempts this action from the one-action rule. (*Id.* at 14).

In support of its motion for summary judgment, Plaintiff provides a declaration from Leo Moschioni, Vice President of Plaza Bank, and supporting exhibits and a declaration from attorney Nicole Lovelock and supporting exhibits. (*See* Ex. A (#13-1); Ex. B (#13-2)). On December 3, 2010, Green's attorney sent Plaintiff a letter which stated the following:

> Please be advised that I am counsel for Mr. Alan Green and in his capacity as Trustee for the Alan Green Family Trust. . . . As you may be aware, Mr. Green has had recent communications with your bank regarding the status of the loan which originated between The Alan Green Family Trust and SouthwestUSA Bank in 2006. I would note that, based on my review, the loan agreement exists solely between the Trust and the bank, and there is no personal guarantee in place for this loan.

8

> Unfortunately, the Trust no longer has any income or assets to continue making payments on the existing loan agreement, except for the security asset property located at 1900 South 16th Street in Las Vegas [the Vegas Property]. Given these events, the November, 2010, payment on the loan will be the final payment made in this matter. The Trustee is willing to offer a deed in lieu of foreclosure for the collateral property which secures the loan agreement to compromise this manner in exchange for a full release and satisfaction in favor of the Trust.

(Ex. A (#13-1) at 4; Ex. A-3 (#13-1) at 34).

According to a warranty deed recorded with Yavapai County, the Green Trust conveyed to Green the property located at 2122 Golf Links Dr., Prescott, Arizona, for consideration of ten dollars on December 3, 2010. (Ex. A (#13-1) at 4; Ex. A-4 (#13-1) at 36-37).[2] According to the warranty deed recorded with Yavapai County, the Green Trust conveyed to Linda Smith the property located at 1608 Coyote Road, Prescott, Arizona for consideration of ten dollars on December 8, 2010. (Ex. A (#13-1) at 5; Ex. A-6 (#13-1) at 42, 45).

Plaintiffs include a document that purports to be an individual financial statement from Green from April 2009, whereby Green states that the 2122 Golf Links Drive property had a market value of $900,000 with a mortgage balance of $400,000; the 2201 Resort Way property had a market value of $800,000 with a mortgage balance of $300,000; and the 1608 Coyote Road property had a market value of $300,000 without a mortgage balance. (Ex. A (#13-1) at 5; Ex. A-4 (#13-1) at 47).

On December 21, 2010, the Bank requested an appraisal of the Vegas Property which valued the property at $175,000. (Ex. A. (#13-1) at 5). On December 28, 2010, Plaintiff's attorney received a letter from Defendants' attorney which stated:

> the position of the Trust remains that there is no trust income to continue making payments under the original line of credit agreement entered into in 2006 between the Trust and the original lender, Southwest Bank. I would note that the existing credit agreement was secured solely by [the Vegas Property], when the line of credit was established. The Bank did not request any additional collateral, and no financial guarantee when the loan was initiated in 2006. The Bank made the loan based off of the value of the home and its appraisal only, as no other assets were pledged or collateralized to secure the loan. The

---

[2] Although Plaintiff purports to attach a copy of the warranty deed of the Green Trust's conveyance of the property at 2201 Resort Way, Prescott, Arizona, to Green for consideration of ten dollars on December 3, 2010, Exhibit 5 is the same warranty deed as Exhibit 4 for 2122 Golf Links Drive. (*See* Ex. A (#13-1) at 4-5; Ex. A-5 (#13-1) at 39-40).

9

> existing contract did not require the Trust to pledge or secure any additional Trust property for this loan agreement.
>
> The Trust, itself has . . . never had any income during its existence . . . . [The Vegas Property] is the only asset which secures the underlying indebtedness with the Bank.
>
> The Trust has had the property for sale over 18 months with no buyers in this depressed real estate market. It was the intent of the Trust to sell the home and repay the outstanding loan, however, market conditions have not allowed this to occur.

(Ex. B (#13-2) at 2-3; Ex. B-1 (#13-2) at 6).

Plaintiff's attorney requested that Defendants' attorney provide a disposition of the Green Trust's assets for the past two years but never received any documents. (Ex. B (#13-2) at 3). Plaintiff's attorney provides a copy of correspondence to Defendants in this matter. (*Id.*). On January 5, 2011, Plaintiff's attorney sent Defendants' attorney a letter which stated that:

> In response to your December 28th and January 4th correspondence, we conclude that your client's refusal to disclose the disposition of assets for the last two years means that material assets have been transferred from the Alan Green Trust. As it appears the Trust has divested itself of substantial assets, we are recommending that Plaza Bank reject the deed in lieu of foreclosure, commence a non-judicial foreclosure, and seek a deficiency . . . .

(Ex. B-2 (#13-2) at 9-10).

In response, Defendants argue that the transfers did not make the Green Trust insolvent because Green transferred out $1,270,000 worth of debt from the Trust, "which effectively removed debt obligations from the Trust, improving its position." (Opp'n to Countermotion (#15) at 10). They reassert that, in Nevada, a trustee has the power to remove assets from the Trust at anytime for any reason. (*Id.*).

In support of their argument, Defendants provide the declaration of Green and exhibits for each transferred property. (*See* Green Aff. (#15-1) at 3). With respect to the property at 1608 Coyote, the exhibits state the following. Green purchased the property in July 2002 for $168,500. (Settlement Statement from July 2002 (#15-2) at 1). Green personally owned the condo and had no mortgage or other indebtedness on the property when he transferred the condo into the Trust in 2006. (Green Aff. (#15-1) at 3). The Trust did not compensate him for

the transfer. (*Id.*). On December 16, 2010, the Green Trust sold the property to Linda Smith for $215,000. (Settlement Statement from December 2010 (#15-3) at 1-2, 5). Upon the close of escrow, the Green Trust received a check for $204,461.87. (*Id.* at 1). The Trust then transferred the sale proceeds to Green to reimburse him for his original investment in the condo in 2002. (Green Aff. (#15-1) at 3).

With respect to the property at 2122 Golf Links Drive, the exhibits state the following. In February 2007, Green purchased the property for approximately $528,000. (Settlement Statement dated February 2007 (#15-4) at 1). Wells Fargo loaned Green $275,000 for the first mortgage on the property. (Conditional Commitment Letter (#15-5) at 2). Wells Fargo also issued Green a second revolving line of credit for $200,000. (Account Statement (#16-1) at 1). Green stated that he had purchased the property in the name of the Trust in 2007, but the purchase was based on his own personal credit standing. (Green Aff. (#15-1) at 3). In August 2010, Green refinanced his first mortgage with Wells Fargo for the same principal amount of $275,000. (Settlement Statement dated August 2010 (#16-2) at 1). Green stated that, although he personally refinanced the loan with Wells Fargo in his name, the house remained in the name of the Trust. (Green Aff. (#15-1) at 3-4). The house has a total debt of $475,000. (*Id.* at 4). Green is personally responsible for the debt despite the home being purchased in the name of the Trust. (*Id.*). The home has no equity and does not have a value of $900,000. (*Id.*). In late 2010, Green transferred the property out of the name of the trust, thus, removing an asset with no equity and $475,000 worth of debt from the trust. (*Id.*).

With respect to the property at 2201 Resort Way, the exhibits state the following. In May 2006, the Green Trust purchased the property for $420,000 in cash. (Settlement Statement May 2006 (#16-3) at 1). Green secured a line of credit with Wells Fargo for this property for $325,000. (Account Statement (#16-5) at 1). In late 2010, the Trust transferred the property out of the Trust. (Green Aff. (#15-1) at 4).

In reply, Plaintiff argues that Green's affidavit demonstrates that Green will transfer a property into the Green Trust free and clear but then pay himself back for the original purchase and investment years later. (Reply to Countermotion (#17) at 5). Plaintiff argues that trusts

are separate and distinct legal entities and, thus, when the Green Trust transferred the properties to Green, he needed to provide an exchange of reasonably equivalent value. (*Id.* at 9).

### A. First Cause of Action: Declaratory Relief

The Nevada Legislature enacted several exemptions to the one-action rule by clarifying the word "action." *McDonald*, 123 P.3d at 751. The word "action" does not include any act or proceeding, inter alia, "[f]or the recovery of damages arising from the commission of a tort, . . . , or the recovery of any declaratory or equitable relief" or "[f]or the exercise of a power of sale pursuant to NRS 107.080." Nev. Rev. Stat. § 40.430(6)(d)-(e). There are no Nevada cases that state whether an action for fraudulent conveyance is akin to a tort. However, other courts have recognized that a "majority of courts allow a tort plaintiff to challenge a tortfeasor's allegedly fraudulent transfer of property in the same action as the tort suit." *Rutherford v. Kessel*, 560 F.3d 874, 879 (8th Cir. 2009).

This Court finds that a claim for fraudulent conveyance is akin to a tort. Accordingly, the Court grants summary judgment on Plaintiff's first cause of action for declaratory relief that pursuing a fraudulent conveyance claim does not violate Nevada's one-action rule because a fraudulent conveyance claim is an exemption to the rule pursuant to NRS § 40.430(6)(d). However, as discussed at oral argument, the Court orders Plaintiff to amend its complaint within 60 days from the date of oral argument to state whether it is: (a) waiving the collateral and asking for judgment on the note, or (b) foreclosing on the Vegas Property and seeking a deficiency.

### B. Second Cause of Action: Actual Fraudulent Transfer NRS § 112.180

The Uniform Fraudulent Transfer Act is "designed to prevent a debtor from defrauding creditors by placing the subject property beyond the creditors' reach." *Herup v. First Boston Fin., LLC*, 162 P.3d 870, 872 (Nev. 2007). Pursuant to NRS § 112.180 "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay or defraud any

creditor of the debtor." Nev. Rev. Stat. § 112.180(1)(a). In determining actual intent, a court may consider a non-exclusive list of factors including: (a) the transfer or obligation was to an insider; (b) the debtor retained possession or control of the property transferred after the transfer; (c) the transfer or obligation was disclosed or concealed; (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) the transfer was of substantially all the debtor's assets; (f) the debtor absconded; (g) the debtor removed or concealed assets; (h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (k) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. Nev. Rev. Stat. § 112.180(2)(a)-(k).

"A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Nev. Rev. Stat. § 112.160(1). "A debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." Nev. Rev. Stat. § 112.160(2). An asset is property of the debtor but does not include property to the extent that it is encumbered by a valid lien. Nev. Rev. Stat. § 112.150(2)(a).

In this case, the Court acknowledges that there are facts in the record that demonstrate that the Green Trust may have had actual intent to hinder Plaintiff's ability to recover from the Green Trust. However, the Court finds that there is a genuine issue of material fact as to whether the Green Trust had "actual intent" to hinder Plaintiff. Accordingly, the Court denies summary judgment on the second cause of action and preserves this claim for trial.

**C.     Third Cause of Action: Constructive Fraudulent Transfer NRS § 112.190**

Pursuant to NRS § 112.190, a "transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the

13

transfer . . . ." Nev. Rev. Stat. § 112.190(1). "Generally, the creditor bears the burden of proof both with respect to the insolvency of the debtor and the inadequacy of consideration." *Sportsco Enter. v. Morris*, 917 P.2d 934, 938 (Nev. 1996). "However, where the creditor establishes the existence of certain indicia or badges of fraud, the burden shifts to the defendant to come forward with rebuttal evidence that a transfer was not made to defraud the creditor." *Id.* "The defendant must show either that the debtor was solvent at the time of the transfer and not rendered insolvent thereby or that the transfer was supported by fair consideration." *Id.* Recognized indicia of fraud include:

> lack of consideration for the conveyance, the transfer of the debtor's entire estate, relationship between transferor and transferee, the pendency or threat of litigation, secrecy or hurried transaction, insolvency or indebtedness of the transferor, departure from the usual method of business, the retention by the debtor of possession of the property, and the reservation of benefit to the transferor.

*Id.*

In this case, there are a number of indicia of fraud. First, in two of the three transferred properties the Trust received no consideration or minimal consideration for the conveyance. Second, the Green Trust transferred those two properties to its trustee, Green. Third, the Green Trust knew that it was about to face litigation after it told Plaintiff that it was no longer going to make payments on the loan. Fourth, the transfers occurred on the same day or a couple days after the Trust told Plaintiff that it had no income or assets and was not going to make any more payments on the loan. Fourth, after the transfers, the Green Trust was insolvent because the Vegas Property could not cover the repayment of the loan. Fifth, after having the various properties in the Green Trust for several years, the Trust started to immediately transfer the properties out of the Trust on the day it decided not to repay the loan. Sixth, Green as a trustee and then later as an individual retained possession of the 2122 Golf Links property, the 2201 Resort Way property, and the cash from the sale of the 1608 Coyote property after the transfers.

Because Plaintiff has demonstrated indicia of fraud, Defendants have the burden to demonstrate that the Green Trust was solvent at the time of the transfer and was not rendered

insolvent after the transfer and that the transfer was supported by fair consideration. The Court finds that Defendants have failed to meet their burden with respect to the 1608 Coyote property. After the Green Trust sold the 1608 Coyote property for $215,000, the Green Trust transferred all of the monetary proceeds to Green for nothing in return. As such, the Court grants summary judgment on Plaintiff's third cause of action for constructive fraudulent conveyance with respect to the cash sale of the 1608 Coyote property. However, the Court denies, without prejudice, Plaintiff's motion for summary judgment with respect to constructive fraudulent conveyance as to the 2122 Golf Links and 2201 Resort Way properties. As discussed at oral argument, Defendants have 90 days from the date of oral argument to obtain an appraisal of the two real properties in Green's possession. As stated at oral argument, Plaintiff may conduct an independent appraisal of the two properties if it so chooses.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' Motion to Dismiss Complaint and/or in the Alternative Motion for Summary Judgment (#6) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Countermotion for Partial Summary Judgment (#13) is GRANTED in part and DENIED in part. Specifically, the Court grants summary judgment on Plaintiff's first cause of action in its entirety and third cause of action with respect to the cash sale of the 1608 Coyote property. The Court denies summary judgment on Plaintiff's second cause of action in its entirety and third cause of action with respect to the 2122 Golf Links and 2201 Resort Way properties.

DATED: This  26th   day of July, 2011.

_____
United States District Judge

15