UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PLAZA BANK, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ALAN GREEN FAMILY TRUST, a Nevada trust, ALAN GREEN, an individual,<br><br>Defendants. | Case No. 2:11-cv-00130-MMD-RJJ<br><br>ORDER<br><br>(Plf's Partial Motion for Summary Judgment – dkt. no. 54) |

**I.    SUMMARY**

Before the Court is Plaintiff Plaza Bank's Motion for Partial Summary Judgment (Dkt. no. 54.)  Defendants Alan Green Family Trust ("the Trust") and Alan Green filed a Response in Opposition (dkt. no. 62), and Plaintiff filed a Reply (dkt. no. 65).  For the reasons discussed below, the Motion is granted.

**II.    BACKGROUND**

This case is a deficiency action complicated by alleged fraudulent transfer.  The facts are as follows.  In January 2006, the Trust entered into a credit agreement for a $400,000 line of credit (the "Loan Agreement") with SouthwestUSA Bank secured by real property described as 1900 S. 16th Street, Las Vegas, Nevada (the "Collateral Property").  Green was the trustee of the Trust.  Plaintiff later became the owner of the Loan Agreement when it acquired certain assets of SouthwestUSA Bank from the FDIC who had been appointed as SouthwestUSA Bank's receiver.

In addition to the Collateral Property, the Trust held three other properties described as 1608 Coyote Road, Prescott, Arizona (the "Coyote Road Property"), 2122 Golf Links Drive, Prescott, Arizona (the "Golf Links Property"), and 2201 Resort Way, Prescott, Arizona (the "Resort Way Property"). These properties were not collateral on the Loan Agreement but the Golf Links Property and Resort Way Property were subject to other mortgages of $400,000 and $350,000 respectively.

In December 2010, the Trust, through its attorney, sent a letter to Plaintiff indicating that the Trust no longer had any income and would be unable to continue making payments. At or around that same time, the Trust entered into transactions disposing of the other three properties. The Trust transferred the Golf Links Property and the Resort Way Property to Green and sold the Coyote Road Property to a third party for $215,000. The sale proceeds of the Coyote Road Property were then transferred from the Trust to Green.

On January 25, 2011, Plaintiff filed its initial Complaint against the Trust and Green for actual and constructive fraudulent transfer as described in NRS 112.180 and NRS 112.190, respectively, and sought declaratory relief that prosecuting the fraudulent transfer claims did not violate Nevada's One Action Rule, NRS 40.430. On July 26, 2011, the Court granted the declaratory relief and partial summary judgment for constructive fraudulent transfer as to the sale proceeds from the Coyote Road Property only.[1] In doing so, the Court determined that Green was personally liable for the lesser amount of either the deficiency or the sale proceeds. (Dkt. no. 21.) However, at that time, the amount of the deficiency could not be determined because the amount of the outstanding debt and the fair market value of the Collateral Property had not been established.

///

---

[1] The Court declined to grant summary judgment as to the other properties because their fair market value at the time of the transfer was not established. If the fair market value at that time was outweighed by the mortgage on the property, there could be no constructive fraudulent transfer. Resolution of this issue is reserved for trail.

Plaintiff has since submitted evidence establishing the total amount outstanding under the Loan Agreement as $451,890.56.[2] Plaintiff wrote off this amount from its balance sheet as bad debt. Additionally, Plaintiff has now sold the Collateral Property at a trustee's sale, and the parties have stipulated that the fair market value of the Collateral Property at the time of the sale was $170,000. (Dkt. no. 60.)

Now that the amount outstanding and the fair market value of the Collateral Property have been established, Plaintiff seeks a $215,000 judgment against Green as an individual to recover the fraudulently transferred sale proceeds from the Coyote Road Property. Although those proceeds are insufficient to cover the entire deficiency, Plaintiff has moved for partial summary judgment against Green to recover part of the deficiency before trial. Because no question of material fact remains as to the proceeds and Plaintiff is entitled to the deficiency as a matter of law, the Motion is granted.

## III.   DISCUSSION

### A.   Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material

---

[2]The breakdown of the total is as follows: $398,126.77 in principal, $25,327.41 in accrued interest, $1,353.71 in late fees, $450.00 in appraisal fees, $18,595.07 in legal fees, $5,807.60 in trustee's fees, $150.00 in title search fees, and $2,080.00 in forced placed insurance.

facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

**B.    Analysis**

The Motion is in a somewhat unusual posture as most of the issues have previously been resolved by the Court's previous Orders. However, Defendants have argued in their Opposition that questions of material fact remain. Thus, the Court will first assess the Trust's default, the amount of default and the amount of deficiency, and then assess Green's personal liability for the sale proceeds. Because the Court finds that no genuine issues of material fact remains as to the Trust's default, the amount outstanding under the Loan Agreement at the time of default, the amount of deficiency, and Green's personal liability, Plaintiff is entitled to judgment as a matter of law.

## 1. Default and Amount of Deficiency

Plaintiff has presented evidence that Defendant breached the Loan Agreement by failing to make payments. Further, Plaintiff has established that the amount of outstanding principal, interest, and fees was $451,890.56. In fact, in an Interrogatory Response, Defendants acquiesced to Plaintiff's financial information saying that they "would assume that the loan history, which is possession of Plaintiff, would have an accurate statement of monies disbursed under the [Loan] and payments made by the Trust." The stipulated fair market value of the Collateral Property at the time of the trustee's sale was $170,000. Subtracting the fair market value of the Collateral Property from the amount outstanding under the Loan, the resulting deficiency is $281,890.56. Thus, the default and the amount owing under the loan and the amount of the deficiency are uncontroverted.

Defendants instead assert that Plaintiffs have no legal right to collect the deficiency. They base this assertion on three arguments. First, Defendants argue that Plaintiff is only entitled to foreclose on the Collateral Property, not pursue any other assets. Second, Defendants argue that Plaintiff purchased the loan from the FDIC at a deep discount or received compensation for the bad loan from the FDIC fund through the loss share transaction used to purchase SouthwestUSA Bank's assets. Consequently, Defendants argue, Plaintiff is not entitled to receive the full contractual repayment amount, but rather, only reimbursement for the discounted or offset price actually paid to purchase the loan. Finally, Defendants argue that Plaintiff's act of charging off the loan from their balance sheet rendered the loan worthless and, thus, Plaintiff may not pursue Defendants for worthless debt. Defendants request the Court to provide for additional discovery so that they may develop evidence supporting these arguments.

The Court finds that all of these arguments are irrelevant and that therefore no material dispute exists as to the validity of the deficiency. First, as the Court explained in its prior Order, a creditor may receive a deficiency judgment if the proceeds of the sale of

the foreclosed property are less than the balance due to the creditor. *See* NRS 40.455(1). This rule only has a limited exception for the principal residence of the debtor. *See* NRS 40.455(3)(a)-(d). Consequently, while the under-collateralization of a loan carries inherent risks of being an unsecured lender and, in some cases, may be a bad business practice, it does not foreclose deficiency actions as a remedy for default. Plaintiff is not limited to foreclosing on the Collateral Property as its sole remedy. Having foreclosed on the Collateral Property, and having not obtained the balance owed through the sale, Plaintiff is entitled to pursue other Trust assets to satisfy the deficiency.

Second, "[a]n assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged." *Easton Bus. Opp. v. Town Executive Suites*, 230 P.3d 827, 831 (Nev. 2010) (citing *Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 269 (2d Cir. 1983)). A contractual right is assignable unless expressly precluded by the writing or when assignment would materially alter the obligations of the parties. *Id.* at 830 (citing Restatement (Second) of Contracts § 317(2)(a)-(c) (1981)). Further, where the obligation of a party is to pay money, assignment never materially alters that obligation. *Id.*

No facts here cast doubt on the validity of the assignment of the loan. With a valid assignment, the manner in which Plaintiff obtained the assignment, the price paid, or any money which the FDIC may or may not have paid Plaintiff in connection with the assignment does not affect the parties' obligations under the loan agreement. The Trust, as the obligor, is still bound by the terms of the contract, and thus, is liable for any deficiency thereunder.

Finally, as the Court discussed in its Order dismissing Defendants' counterclaims, it is well established that a bank's act of writing off a bad loan does not extinguish a debtor's obligation under that loan. *See e.g.*, *In re Zilka*, 407 B.R. 684, 687 (Bankr. W.D. Pa. 2009). A charge-off is an accounting procedure and often mandated by regulations, but it does not affect the legal obligation of the debtor. *See Star Bank, Kenton County,*

6

*Inc. v. Parnell*, 992 S.W.2d 189, 189 n.2 (Ky. App. 1998).  The Court's analysis does not change now that Defendants have raised the same arguments as an affirmative defense.  The charge-off by Plaintiff is wholly irrelevant to the Trust's obligations and its liability for the deficiency.

The Court doubts that any further discovery on these matters would lead to relevant evidence.  More importantly, Defendants' request for further discover has already been denied.  Furthermore, Defendants' motion to reconsider that denial has been denied.  Defendants' parade of the same request and supporting arguments is tiresome and unpersuasive.

Ultimately, Defendants' arguments challenging the deficiency are irrelevant and do not raise any question of material fact.  Further, the evidence in the record as to the existence of the loan, the amount due and owing at the time of default, and the fair market value of the foreclosed property are undisputed and entitle Plaintiff to judgment as a matter of law.  Thus, the Trust is liable for the deficiency of $281,890.56 plus any additional accrued interest that can be proved.

**2.    Green's Personal Liability**

The Court previously granted summary judgment for constructive fraudulent transfer with respect to the proceeds from the Coyote Road Property.  In an action for fraudulent transfer, a creditor may obtain avoidance of the transfer to the extent necessary to satisfy the creditor's claim.  NRS 112.210(1)(a).  In doing so, a creditor "may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditors claim" from "[t]he first transferee of the asset or the person for whose benefit the transfer was made. NRS 112.220(2).  Although, Green, as trustee, had legal authority to dispose of property and the sale of the Coyote Road Property was valid, the proceeds from the sale belonged to the Trust.  By transferring the proceeds to himself as an individual, Green became personally liable as the first transferee and the person for whose benefit the transfer was made.  Under the Nevada fraudulent transfer statutes, judgment is proper for the lesser amount of the deficiency or

the sale proceeds.  Since the deficiency is greater than the sale proceeds, Green is personally liable for $215,000 of the Trust's deficiency.

In order to recover the remainder of the deficiency from Green, Plaintiff must show that the Golf Links Property or the Resort Way Property was also fraudulently transferred.  These issues have been reserved for trial.

### III.  CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment is GRANTED.

DATED THIS 1st day of October 2012.

_____
UNITED STATES DISTRICT JUDGE